```
TOBENER LAW CENTER
JOSEPH S. TOBENER SBN: 203419
21 Masonic Avenue, Suite A
San Francisco, California 94118
Telephone: (415) 504-2165
Facsimile: (415) 418-3492

Attorney for PLAINTIFFS
```





UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. SALEHA ALIMI, SALEHA ALIMI, and ZARMINA ALIMI,<br>      Plaintiffs,<br>vs.<br>KAILIN YANG,<br>      Defendant. | Case No. CV12 0352 LB<br><br>COMPLAINT<br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

## I. PRELIMINARY STATEMENT

1. *Qui tam* Plaintiffs SALEHA ALIMI and ZARMINA ALIMI were residential tenants living in Fremont, California. Because of their extremely limited income, Plaintiffs were eligible for rental assistance through a federally subsidized program known as the "Housing Choice Voucher Program" ("HCVP"), more known as "Section 8". The program provides low-income tenants a subsidy to rent privately-owned housing. Each participant pays a fixed percentage of their monthly income in rent and utilities and Plaintiff UNITED STATES OF AMERICA, acting through a local

public housing agency, pays the balance of rent directly to the owner.

2. Defendant KAILIN YANG was a party to a lease agreement with Plaintiff SALEHA ALIMI and with the Housing Authority of the County of Alameda, which administered the Section 8 funds. The Housing Authority of the County of Alameda explicitly instructed Defendant KAILIN YANG to not charge Plaintiffs anything more than the amount agreed to in the contracts. But, Defendant KAILIN YANG threatened to evict Plaintiffs unless they paid additional illegal rent, known as Section 8 side payments.

3. Defendant KAILIN YANG also violated California state law under a Breach of Contract theory, including the implied warranty of habitability and the implied covenant of quiet enjoyment, by (a) refusing to provide Plaintiffs with a key to one the four bedrooms in the unit for more than a month; (b) having outdoor locking mechanisms on interior doors without keys for three months; (c) refusing or failing to repair a broken toilet that could not be used at all for nearly three months; (d) entering without notice; and (e) demanding rent in excess of the contracted amount.

4. Defendant further violated California state law by refusing to return Plaintiffs security deposit as required by California Civil Coder section 1950.5.

5. The Defendant's actions caused Plaintiffs economic damages and emotional distress.

6. This action is brought under the False Claims Act, 31 U.S.C. section 3729, et seq.; the California security deposit statute, California Civil Code section 1950.5; California common

law breach of contract and California Civil Codes sections 1927 and 1941 *et seq.;* and California common law negligence and Civil Code section 1929.

7. Plaintiff SALEHA ALIMI seeks her statutory share of any award made to the United States, in addition to costs and reasonable attorney fees. The United States seeks all available remedies available under the False Claims Act.

## II. PARTIES

8. Plaintiffs ZARMINA ALIMI and SALEHA ALIMI were tenants of Defendant KAILIN YANG at premises located 4331 Westerly Common, Fremont, California 94538 ("the Premises") from on or about June 1, 2010 to on or about July 6, 2011.

9. Plaintiff UNITED STATES OF AMERICA is ex rel., Plaintiff SALEHA ALIMI.

10. Defendant KAILIN YANG owns "the Premises", and resides in Alameda County, California and is engaged in commerce in Alameda County, California, leasing dwelling units there.

## III. JURISDICTION

11. This Court has jurisdiction over the federal claim pursuant to *28 U.S.C. § 1331* and *31 U.S.C. § 3732*.

12. This Court has supplemental jurisdiction over the state claims, pursuant to *28 U.S.C. § 1367*.

## IV. VENUE

13. Defendant KAILIN YANG resides within the jurisdiction of the Northern District of California.

14. All of the events giving rise to all of the claims occurred within the jurisdiction of the Northern District of California.

V. INTRADISTRICT ASSIGNMENT

15. This case should be assigned the San Francisco/Oakland division because all of the events giving rise to all of the claims occurred in Alameda County.

VI. HOUSING CHOICE VOUCHER PROGRAM (SECTION 8)

16. The Section 8 Housing Choice Voucher Program is a federal program intended to assist low-income families in obtaining decent, safe, sanitary, and affordable housing and is authorized by Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. § 1437f. Regulations governing the Section 8 program are contained in 24 C.F.R. Part 982.

17. The pertinent federal regulations promulgated to implement the Act provide that under the Section 8 Housing Choice Voucher Program, a tenant family enters into a lease with a landlord/owner that continues until its expiration or termination by the owner, the participant family, or by the public housing agency ("PHA"). Generally, participants pay 30 to 40 percent of their adjusted monthly income toward the rent and utilities, or in certain cases, slightly more, while the PHA pays the balance. 24 C.F.R Part 982.

18. The United States Department of Housing and Urban Development ("HUD") administers the program.

19. HUD enters into annual contribution contracts with public housing agencies such as the Housing Authority of the County of Alameda.

20. Pursuant to an annual contribution contract, the public housing agency ("PHA") may enter into a HUD form contract known as a Housing Assistance Payments Contract ("HAP") with the

landlord of a dwelling unit to make monthly housing assistance payments on behalf of an eligible tenant family.

21. The landlord simultaneously enters into a lease for the dwelling unit with the family. The lease must contain federally mandated terms or be on an approved HUD form.

22. The HAP establishes the initial lease term and initial monthly rent to the landlord. The landlord may not increase the total rent payable to the landlord during the initial lease term.

23. The HAP also sets out the amount of the housing assistance payment by the PHA to the landlord, calculated in accordance with the regulations.

24. The HAP provides that the tenant is responsible for paying the landlord the balance of the rent not covered by the housing assistance payment.

25. The amount of the PHA's monthly housing assistance payment to the landlord is determined in accordance with HUD regulations for the Section 8 program.

26. The sum of the housing assistance payment and the tenant's share of the rent payable to the landlord are known as the contract rent.

VII. STATEMENT OF FACTS

27. In or around April 2010, Plaintiff ZARMINA ALIMI and her family needed a place to live. Plaintiff ZARMINA ALIMI contacted Defendant KAILIN YANG regarding renting 4331 Westerly Common, Fremont, California 94538 ("the Premises").

28. On or about April 27, 2010, Plaintiff ZARMINA ALIMI subsequently signed a one-month lease with Defendant KAILIN YANG. The agreed monthly rent was $2,995.

29. The lease was to commence on June 1, 2010, but Plaintiff ZARMINA ALIMI'S husband lost his job and was forced to relocate overseas. Because of this economic hardship, Plaintiff ZARMINA ALIMI could no longer afford to rent the Premises. However, she and the couple's two minor children remained in the San Francisco Bay Area.

30. Given her economic hardship, Plaintiff SALEHA ALIMI, Plaintiff ZARMINA ALIMI'S mother-in-law, suggested Plaintiff ZARMINA ALIMI and her children move in with her. At that time, Plaintiff SALEHA ALIMI received subsidized rent under Section 8.

31. Defendant KAILIN YANG kept calling Plaintiff ZARMINA ALIMI, encouraging her to still rent the Premises. Defendant KAILIN YANG also informed Plaintiff ZARMINA ALIMI that she would accept Section 8 vouchers.

32. In or around May 2010, Plaintiff SALEHA ALIMI and Defendant KAILIN YANG went together to the Housing Authority of the County of Alameda office located in Hayward, California. At that meeting, Defendant KAILIN YANG spoke with an employee of Section 8 housing who explicitly told her, "You understand you can't take any additional money from her [indicating Plaintiff SALEHA ALIMI]." Defendant KAILIN YANG responded, "Yes".

33. On or about May 25, 2010, Plaintiff SALEHA ALIMI and Defendant KAILIN YANG signed a lease contract. The Housing Authority of the County of Alameda approved the lease for Section 8 subsidies. The total contract rent was $1,681 per

month.  Plaintiffs' portion was $788.  The Section 8 subsidy paid directly to Defendant KAILIN YANG covered the difference of $893.

34. The lease contract also required a $2,995 deposit, which was paid by Plaintiffs ZARMINA ALIMI and SALEHA ALIMI in the form of $2,900 cashier's check and $95 in cash.

35. Plaintiffs ZARMINA ALIMI and SALEHA ALIMI and Plaintiff ZARMINA ALIMI'S two children aged six and eleven, moved into the Premises on or about June 1, 2010.

36. When the family first moved in, Defendant KAILIN YANG told Plaintiff ZARMINA ALIMI that she should not tell anyone that she was a tenant.  Defendant KAILIN YANG also told her to just say that she was "a friend, not a tenant."  In addition, she was informed that the property had been vacant for more than a year and that Defendant KAILIN YANG would come by every Friday to pick up her personal mail.

37. Throughout the Premises, outdoor locks were installed on interior doors.  Defendant KAILIN YANG refused to give Plaintiffs keys to these interior locks.  At one point, the fourth bedroom was locked for an entire month.  Defendant KAILIN YANG refused to unlock it or give keys to Plaintiffs stating, "Train your kids not to play with locks."  Plaintiffs were not provided keys for all the rooms until August 2010 – over two months after moving-in.

38. From the beginning of the tenancy, the water in the upstairs toilet ran continuously and would not flush properly.  Plaintiffs had to shut it off.  Plaintiff ZARMINA ALIMI called Defendant KAILIN YANG several times regarding the toilet.

Nevertheless, Defendant KAILIN YANG refused to fix the toilet. Plaintiffs could not use the bedroom toilet for nearly three months. Eventually, Defendant KAILIN YANG stated that she would send a handyman to fix the toilet. The handyman that finally fixed the toilet entered the Premises with no notice to Plaintiffs.

39. Defendant KAILIN YANG herself entered the Premises without notice on three separate occasions. Plaintiffs complained about the illegal entry, but Defendant continued to enter without notice. It appeared that Defendant KAILIN YANG was pretending to live at the Premises.

40. On two occasions, Defendant KAILIN YANG brought in a whole crew, along with a Realtor named Dean Singha. Defendant KAILIN YANG said that it was an emergency and that they had to inspect the property. They refused to leave. Plaintiffs called the police. The police told her to go inside the house and close the door. (Reference: Online Police Report #110608400). On the second occasion, Mr. Singha came unannounced with a crew of four, which included a photographer. Plaintiffs asked them to leave and they did.

41. In or around the end of June 2010, Defendant KAILIN YANG called Plaintiff ZARMINA ALIMI and told her that, based on the initial one-month lease signed in April 2010, she must pay additional rent or move out. Defendant KAILIN YANG demanded an additional $512 per month for six months.

42. From July 2010 to December 2010, Plaintiffs paid Defendant KAILIN YANG additional $512 per month in rent.

43. Starting on or about January 1, 2011, Plaintiffs refused pay Defendant KAILIN YANG the additional $512 in rent. Plaintiff ZARMINA ALIMI did continue to pay her monthly Section 8 share $788.

44. With their lease ending June 2011, Plaintiffs moved out on July 7, 2011 Defendant KAILIN YANG kept calling Plaintiffs and putting notices on their door.

45. Plaintiffs found a new home in July 2011 that also accepted Section 8 vouchers.

46. On July 7, Defendant KAILIN YANG'S realtor Mr. Singha again came to the unit. Mr. Singha wrote a note stating "No damage to the house, except bathtub and shampoo."

47. On July 28, 2011, Defendant KAILIN YANG'S property manager sent Plaintiffs a note that said "UNPAID BALANCE". Defendant KAILIN YANG refused to return any of the security deposit. The security deposit was $2,995.

VIII. CAUSES OF ACTION

FIRST CAUSE OF ACTION UNDER THE FALSE CALIMS ACT
BY PLAINTIFF UNITED STATES OF AMERICA EX REL.
SALEHA ALIMI ONLY AGAINST DEFENDANT KAILIN YANG

48. Plaintiffs incorporate by reference Paragraphs 1 through 47.

49. The False Claims Act ("FCA") provides that any person who "knowingly presents . . . a false or fraudulent claim for payment or approval" to the United States is liable on each such claim for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained

by the United States. In addition, any person who violates the FCA is liable for costs and attorney fees. 31 U.S.C. § 3729(a).

50. The FCA defines the terms "knowing" and "knowingly" as meaning, with respect to information, that a person "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

51. The FCA defines a "claim" as "any request or demand . . . for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).

52. For each of the six months that Defendant KAILIN YANG accepted the side payments from Plaintiffs, the defendant endorsed and presented for payment the housing assistance payments from the United States.

53. Defendant KAILIN YANG knowingly endorsed and presented for payment six separate housing assistance checks totaling $5,358, while receiving additional lawful payments from Plaintiffs totaling $4,728 and illegal side payments totaling $3,072.

54. Defendant KAILIN YANG'S endorsement and presentation for payment of each assistance check for each month, while, she

knowingly received "side payments" from Plaintiffs, constitutes a separate false claim or representation against the United States that she did not receive any other consideration for the rented premises for that month, as set forth in the HAP contract.

55. The United States of America suffered damages as a result of violations of the False Claims Act, because the money which HUD disbursed to the SHA for payment of Section 8 housing assistance would not have been paid to the Defendant KAILIN YANG absent her false claims and misrepresentations.

56. The United States sustained damages equal to all payments made to Defendant KAILIN YANG pursuant to Plaintiff's Section 8 assistance program lease.

SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

BY PLAINTIFF SALEHA ALIMI ONLY

AGAINST DEFENDANT KAILIN YANG

57. Plaintiffs incorporate by reference Paragraphs 1 through 47.

58. Plaintiff SALEHA ALIMI entered into a written contract with Defendant KAILIN YANG for the Premises.

59. Implied in the written contract was an implied warranty of habitability.

60. Implied in the written contract was an implied covenant of quiet enjoyment.

61. The written contract has an attorney fee and costs provision.

62. Plaintiffs notified Defendant KAILIN YANG or her agents of all the repair issues at the Premises. In addition,

Defendant KAILIN YANG knew or could have known with reasonable diligence about all of the repair issues at the Premises.

63. Defendant KAILIN YANG ignored all of these repair issues, failed to repair these issues, or negligently repaired these issues.

64. Plaintiff SALEHA ALIMI did all of the significant things that the contract required him to do.

65. All conditions required by the contract for Defendant KAILIN YANG'S performance occurred.

66. Defendants breached the contract by (a) refusing to provide Plaintiffs with a key to one the four bedrooms in the unit for more than a month; (b) having outdoor locking mechanisms on interior doors without keys for three months; (c) refusing or failing to repair a broken toilet that could not be used at all for nearly three months; (d) entering without notice; and (e) demanding rent in excess of the contracted amount.

67. As a proximate result of Defendant KAILIN YANG'S breach, Plaintiff SALEHA ALIMI suffered loss of use and enjoyment of Premises, overpayment in rent, attorney fees and costs, property damage, repair costs, out-of-pocket costs, and loss of wages.

THIRD CAUSE OF ACTION FOR BAD FAITH RETENTION OF SECURITY DEPOSIT BY PLAINTIFF SALEHA ALIMI ONLY AGAINST DEFENDANT KAILIN YANG

68. Plaintiffs incorporate by reference Paragraphs 1 through 47.

69. Defendant KAILIN YANG refused to return Plaintiff SALEHA ALIMI'S $2,995 security deposit.

70. The Premises was returned to Defendant KAILIN YANG in good condition, normal wear and tear excepting, as verified in writing by Defendant KAILIN YANG'S agent on June 7, 2011.

71. Defendant KAILIN YANG refused to return Plaintiff SALEHA ALIMI'S security deposit in bad faith because Plaintiffs asserted their rights under law by, *inter alia,* refusing to pay the Section 8 side payments, requesting repairs, and requiring proper notice for entry.

72. California Civil Code section 1950.5 authorizes a penalty of two times the security deposit, in addition to actual damages, for bad faith retention of security deposit. Double damages are $5,990. Actual damages are $2,995. The total damages are $8,985.

73. Under California Civil Code section 1950.5, a landlord has the burden of proof as to the reasonableness of any deductions.

FOURTH CAUSE OF ACTION FOR NEGLIGENCE UNDER CALIFORNIA LAW
BY ALL PLAINTIFFS AGAINST DEFENDANT KAILIN YANG

74. Plaintiffs incorporate by reference Paragraphs 1 through 47.

75. Defendant KAILIN YANG owed a duty of care as a landlord and manager of residential property.

76. Defendants breached that duty by failing to repair the Premises, by letting the Premises with major habitability violations, and by making substandard repairs to the Premises.

77. Defendant KAILIN YANG violated the following state and local laws in failing and refusing to repair the Premises:

    a) Civil Code § 1941.1, defining the minimum requirements for a habitable building;

    b) Health and Safety Code § 17920.3, defining minimum requirements for habitable building;

    c) City of Fremont Building Maintenance Code; and

    d) City of Fremont Housing Code.

75. These state and local laws are designed to protect Plaintiffs from the very harm complained about herein. All of these laws were in effect at all relevant times in this complaint.

76. Defendant KAILIN YANG's violations of these state and local laws were a substantial factor in causing harm to Plaintiffs.

77. Plaintiffs suffered from serious emotional distress, including anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

78. The emotional distress suffered by Plaintiffs was sufficiently severe that an ordinary person would have been unable to deal with it.

79. As a proximate result of Defendant KAILIN YANG'S breach of duty, Plaintiffs have suffered from a lease worth less than rent paid, property loss, mental injury, bodily and personal injury, medical expenses, cost of repairs, loss of use and enjoyment of their rental apartment, attorney fees, and loss of wages.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ZARMINA ALIMI and SALEHA ALIMI and the United States of America respectfully request the following relief:

a. Find that the Defendant KAILIN YANG violated the False Claims Act and is liable to the United States of America.

b. Assess a civil penalty against the Defendant KAILIN YANG for each separate violation of the False Claims Act in the amount of not less than $5,500 or more than $11,000 per violation.

c. Award the United States three times the amount of damages that it sustained as a result of the Defendant KAILIN YANG'S acts.

d. Award Plaintiff SALEHA ALIMI the *qui tam* Plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. § 3730(d).

e. If the United States government does not proceed with the False Claims Act action, award costs and reasonable attorney fees to Plaintiff SALEHA ALIMI.

f. Find that Defendant KAILIN YANG violated California Civil Code section 1950.5 and that Plaintiff SALEHA ALIMI is entitled to money damages and penalties.

g. Find that Defendant KAILIN YANG breached the written contract she entered into with Plaintiff SALEHA ALIMI and that Defendant KAILIN YANG breached California Civil Codes sections 1927 and 1941 *et seq.*; and that Plaintiff

       SALEHA ALIMI is entitled to money damages, attorney fees and costs.

  h. Find that Defendant KAILIN YANG was negligent in management of the Premises under California common and Civil Code section 1929 and that Plaintiffs are entitled to money damages.

  i. Grant whatever other relief the Court deems proper.

X. JURY DEMAND

Plaintiffs demand a jury trial on all issues.

DATED: January 23, 2012

                TOBENER LAW CENTER

                _____
                Joseph S. Tobener
                Attorney for PLAINTIFFS